The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Raymond RESSIN, Defendant–Appellant.

No. 79SA554.

Supreme Court of Colorado.

Nov. 24, 1980.

Rehearing Denied Jan. 12, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for plaintiff–appellee.

J. Gregory Walta, Colorado State Public Defender, Margaret L. O'Leary, Deputy State Public Defender, Denver, for defendant–appellant.

QUINN, Justice.

The defendant, Raymond Ressin, appeals from an order of the district court revoking his probation after a revocation hearing pursuant to section 16–11–206, C.R.S. 1973 (now in 1978 Repl. Vol. 8). He asserts that the court erred in admitting certain evidence on the ground that it was obtained by the police in violation of the United States Constitution, *U.S.Const.* Amends. IV and XIV, and the Colorado Constitution, *Colo. Const.* Art. II, Sec. 7. We affirm.

On April 3, 1978, the defendant pled guilty to theft, a class four felony. Section 18–4–401, C.R.S. 1973 (1978 Repl. Vol. 8). The court imposed a sentence for an indeterminate period not to exceed ten years, suspended execution of the sentence, and granted the defendant probation. The conditions of probation included a prohibition against violating federal or state laws during the probationary period.

On November 28, 1978, at about 1:00 a. m., a Denver police detective received a telephone call from an anonymous caller stating that a person at Sid King's Bar in Denver was in possession of cocaine. The caller sufficiently described himself to allow the officer to identify him upon arriving at the bar. The detective and his partner immediately went to the bar and established contact with the caller in the men's restroom. The caller pointed out the defendant as the person with the cocaine. The officers then identified themselves to the defendant and asked him to step outside where they searched his person and recovered a vial and spoon from his pockets. The defendant admitted the vial was his and stated that he purchased it for a female friend. He was taken into custody and released shortly thereafter.[1] The contents of the vial were scientifically examined and identified as a usable amount of cocaine. No new charges were filed against the defendant.

---

1. The defendant claimed in the district court that prior to his release the arresting officers sought to enlist his assistance as an informer and apparently promised not to file a new criminal charge in exchange for that assistance. However, there is no evidence establishing that the officers' proposition to the defendant, or the defendant's performance or non–performance as informer upon his release, had anything whatever to do with the filing of the petition to revoke probation. The petition was filed by the probation department upon the advice of the district attorney. Consequently, we do not address whether the officers' solicitation of the defendant as an informer, in exchange for the decision not to file new charges, might constitute a form of gross official misconduct triggering the exclusionary rule in a subsequent revocation proceeding based on the defendant's failure to perform his side of the bargain. We merely note that governmental solicitation of a probationer to inform on drug activities, when the probationer is under a judicially supervised program of rehabilitation, hardly comports with the underlying aims of probation.

The probation department filed a petition to revoke probation and the matter was heard on February 14, 1979. The court, over the defendant's objection, admitted evidence of the cocaine and spoon seized upon his arrest as well as his inculpatory statement to the police. At the conclusion of the evidence the defendant renewed his objection to the evidence and moved to dismiss the petition. He claimed that the actions of the arresting officers constituted gross misconduct shocking to the conscience of the court and, therefore, the evidence was constitutionally inadmissible. The court overruled his objection and denied his motion to dismiss. Finding beyond a reasonable doubt that the defendant violated the conditions of his probation by knowingly possessing cocaine on November 28, 1978, the court ordered his probation revoked and the sentence previously imposed executed.[2]

The defendant urges two grounds for reversal on this appeal. First, he argues that we should abandon the restrictive rule limiting the suppression of evidence in probation revocation proceedings to cases of gross official misconduct, *People v. Wilkerson*, 189 Colo. 448, 541 P.2d 896 (1975); *People v. Atencio*, 186 Colo. 76, 525 P.2d 461 (1974), and, in its stead, we should adopt a per se exclusionary rule. Next, he claims that even if the restrictive rule is applied to this case, the order revoking his probation should be reversed because the challenged evidence was acquired by gross police misconduct surrounding his arrest.[3]

## I.

*United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), provides the analytic framework for determining the scope of the exclusionary rule in probation revocation proceedings. There, the United States Supreme Court noted that the primary purpose of the rule was to deter unlawful police conduct and its extension to phases of the criminal process outside the trial proper should be determined in accordance with the remedial objectives most efficaciously served by the rule. Thus, the exclusionary rule has not been engrafted on grand jury proceedings, *United States v. Calandra, supra*, nor applied to evidence used at trial to impeach credibility, *e. g.*, *United States v. Havens*, —— U.S. ——, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *see, e. g., Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); nor has the rule been extended to civil proceedings commenced against a defendant by a different sovereign, *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

■ The primary end of probation is the rehabilitation of the offender. To this end the court is empowered to impose conditions and restrictions on a probationer's liberty that are reasonably necessary to insure that he will lead a law–abiding life. Section 16–11–204(1), C.R.S. 1973 (1979 Supp.). In all sentences to probation the court must provide as an explicit condition "that the defendant not commit another offense during the period for which the sentence remains subject to revocation . . . ." Section 16–11–204(1), C.R.S. 1973 (1979 Supp.). Probationary conditions serve the dual purpose of enhancing the reintegration of the offender into a responsible life style and affording society a measure of protection against recidivism. *See, e. g., Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *United States v. Winsett*, 518 F.2d 51 (9th Cir. 1975); *People v.*

---

**2.** Section 16–11–206(3), C.R.S. 1973 (now in 1978 Repl. Vol. 8), places the burden of establishing a violation of probationary conditions upon the prosecution. The burden is by a preponderance of evidence, except when the allegation is that the defendant committed a criminal offense. In that instance the prosecution's burden is beyond a reasonable doubt.

**3.** The defendant does not challenge his statement at the scene of his arrest, or a subsequent custodial statement at the police station, on the basis of a failure to comply with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See* Annot., 77 A.L.R.3d 669 (1977). His sole challenge is that all inculpatory evidence was the product of the gross official misconduct surrounding his arrest and the search of his person.

*Ledford,* 173 Colo. 194, 477 P.2d 374 (1970); *State v. Sears,* 553 P.2d 907 (Alaska 1976); *State v. Davis,* 375 So.2d 69 (La.1979).

There are critical differences between a criminal trial and a probation revocation proceeding. *Gagnon v. Scarpelli, supra.* The former focuses on the issue of guilt and implicates the full array of constitutional protections attending the criminal process. A probation revocation proceeding, on the other hand, centers on the conduct of the defendant after the adjudication of guilt. Complete and reliable information about his conduct is essential to the revocation proceeding. The probationer's commission of a serious offense serves as a strong indication that he is either unwilling to rehabilitate himself or is incapable of reintegration into society at that point, and remedial action by the court might well be necessary in the interests of the probationer and society.

Section 16–11–206(3), C.R.S. 1973, echoes this need for a broad base of factual information in revocation proceedings by providing that "[a]ny evidence having probative value should be received regardless of its admissibility under the exclusionary rules of evidence if the defendant is accorded a fair opportunity to rebut hearsay evidence." In *People v. Atencio, supra,* we declined to extend the full dimensions of the exclusionary rule to probation revocation proceedings. We cautioned, however, that courts should not permit evidence acquired by gross official misconduct shocking to the conscience of the court to serve as the basis for the state imposed sanction of revocation. Such misconduct must be deterred even at the expense of otherwise reliable evidence. This admonition was repeated in *People v. Wilkerson, supra.*

The approach we adopted in *Atencio* and *Wilkerson* finds support in an abundance of state and federal decisions. *United States v. Vandemark,* 522 F.2d 1019 (9th Cir. 1975); *United States v. Winsett, supra; State v. Sears, supra; People v. Coleman,* 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d

1024 (1975) (recognizing rule); *Bernhardt v. State,* 288 So.2d 490 (Fla. 1974); *People v. Dowery,* 20 Ill.App.3d 738, 312 N.E.2d 682 (1974), *aff'd,* 62 Ill.2d 200, 340 N.E.2d 529 (1975); *Dulin v. State,* 346 N.E.2d 746 (Ind. App. 1976); *State v. Davis, supra; State v. Caron,* 334 A.2d 495 (Me. 1975); *State v. Thorsness,* 165 Mont. 321, 528 P.2d 692 (1974); *Lemire v. Bouchard,* 113 N.H. 174, 304 A.2d 647 (1973); *Commonwealth v. Davis,* 234 Pa.Super. 31, 336 A.2d 616 (1975) (recognizing rule); *State v. Kuhn,* 7 Wash. App. 190, 499 P.2d 49 (1972), *aff'd,* 81 Wash.2d 648, 503 P.2d 1061 (1972). Although there is a line of contrary authority, *Amiss v. State,* 135 Ga.App. 784, 219 S.E.2d 28 (1975); *State v. McMilliam,* 243 N.C. 775, 92 S.E.2d 205 (1956); *Michaud v. State,* 505 P.2d 1399 (Okl.Cr.App. 1973); *Rushing v. State,* 500 S.W.2d 667 (Tex.Cr.App. 1973), we choose to adhere to the majority rule adopted in *Wilkerson* and *Atencio.*

A per se extension of the exclusionary rule to probation revocation proceedings would furnish little deterrence to good faith but mistaken incursions into privacy by law enforcement officers. Any incidental benefit wrought by such an approach would be significantly outweighed by the detrimental effect upon society's interest in the effective supervision and rehabilitation of offenders in a probationary setting. The deterrent goal of the exclusionary rule is adequately served by the exclusion of unlawfully seized evidence in a criminal prosecution. *See, e. g., United States v. Calandra, supra; United States v. Schipani,* 435 F.2d 26 (2d Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971); *United States v. Fitzpatrick,* 426 F.2d 1161 (2d Cir. 1970).

A caveat is appropriate here. To justify the sanction of suppression on grounds shocking to the conscience of the court, the official misconduct need not rise to the opprobrious level in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).[4] If it is demonstrated that law

---

4. In *Rochin,* the police unlawfully entered the defendant's home, broke into his bedroom, forcibly but unsuccessfully attempted to ex-

tract capsules from his mouth, and then brought him to a hospital where doctors forced an emetic solution into his stomach causing

enforcement officers knowingly engaged in a pretext arrest and exploratory search of the defendant because of his probationary status, or otherwise pursued in bad faith a course of harassment or other form of gross impropriety, suppression of the fruits of that governmental activity would be both appropriate as a deterrent, *e. g., United States v. Winsett, supra; People v. Watson*, 69 Ill.App.3d 487, 26 Ill.Dec. 19, 387 N.E.2d 849 (1979), and necessary in the interest of judicial integrity, *e. g., State v. Sears, supra; State v. Davis, supra*. In the absence of these or other forms of egregious misconduct, however, the exclusionary rule is inapplicable to probation revocation proceedings.

Thus, we need not determine on this appeal whether the police officer had probable cause to arrest the defendant and search his person. The issue we must address is whether the actions of the police officers in arresting and searching the defendant constituted such gross misconduct as to require suppression of evidence at the revocation hearing.

## II.

In this case there is no evidence of police harassment or of a willful disregard of constitutional standards of arrest and search. Nor is there any evidence that the officers, with foreknowledge of the defendant's probationary status, purposefully effected a pretext arrest and exploratory search in order to utilize the fruits of their conduct in a judicial proceeding exempted from the protection of the exclusionary rule.

Assuming *arguendo* an impropriety occurred, that impropriety stemmed from a mistaken choice of options—the decision to arrest and search immediately rather than first establishing the credibility of the caller or the reliability of his information. Any impropriety here is no greater than those involved in *People v. Atencio, supra*, and *People v. Wilkerson, supra*, where the evi-

dence was seized in an arguably improper stop and frisk during a street encounter. *See* Annot., 77 A.L.R.3d 636 (1977). We cannot conclude that the chosen response in this case constitutes gross official misconduct. The district court, therefore, properly admitted the challenged evidence at the revocation hearing.

The judgment is affirmed.

him to regurgitate the evidence. The United States Supreme Court branded the police conduct as shocking to the conscience of even hardened sensibilities and equivalent to methods close to that of the rack and screw.