The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Allen M. ANDREWS,
Defendant-Appellant.

No. 81SA231.

Supreme Court of Colorado,
En Banc.

Aug. 24, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Lynne Ford, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Davison & White, Ronald A. White, Aurora, for defendant-appellant.

QUINN, Justice.

Allen M. Andrews (defendant) appeals his conviction of the crime of aggravated theft of a motor vehicle, section 18–4–

409(2)(a), C.R.S.1973 (1978 Repl. Vol. 8), claiming that the statutory definition of this offense violates due process of law and that the evidence is legally insufficient to support the conviction.[1] Finding no error, we affirm.

## I.

The information alleged, in essential part, that between October 5 and October 19, 1979, the defendant knowingly exercised control without authorization over a 1980 Concord automobile of Ian Steyn, doing business as Colorado AMC Jeep (AMC), and either retained possession or control of the automobile for more than 72 hours, or caused property damage of $500 or more in his exercise of control over the vehicle.[2] The defendant waived a jury trial and the case was tried to the court.

The prosecution's case consisted of the testimony of two employees of AMC and several exhibits, and established the following facts. AMC is a car dealership owned by Ian Steyn. The defendant was employed there as a car salesman for several months during 1979 and in that capacity had the use of a 1980 Concord automobile for demonstration purposes. All salesmen were furnished a demonstrator vehicle in connection with their sales duties and were permitted to retain the vehicle for their private use during their term of employment. The sales manager testified that AMC's policy was that salesmen were required to inform AMC of any extended trips taken in the demonstrator vehicle on their non-working days. The purpose of this requirement was to permit AMC to contact the salesman in the event a customer expressed an interest in purchasing a demonstrator vehicle.[3]

On or about September 28, 1979, the defendant left his employment for the day and took with him the 1980 Concord vehicle. He never returned to work and failed to return the vehicle. AMC reported the vehicle as stolen on October 5, 1979.

AMC received a letter from its insurance company advising that the vehicle had been involved in an accident in Florida. It was stipulated at trial that the defendant was in a two-car accident in Lakeland, Florida, on October 12, 1979, and that property damage was caused to both vehicles. Damage to the 1980 Concord amounted to $748.29. Ultimately the vehicle was recovered in the latter part of October 1979 from a small Kansas town, near the Colorado border. One of AMC's employees was dispatched there to pick it up.

At the conclusion of the prosecution's case the defendant's motion for judgment of acquittal was denied. The defendant then testified as a witness in his own behalf. He commenced employment with AMC in May 1979 and previously had been in the automobile sales business for ten years. He confirmed that he left the state near the end of September 1979 in the demonstrator vehicle which had been assigned to him by AMC. He traveled to Florida to visit his sick father. He admitted not informing AMC of the location of the vehicle even though, according to his other witnesses, he knew that the dealership had been attempting to locate it and had demanded its return. Upon leaving Florida on October 16, he drove the vehicle to Kanorado, Kansas, where he parked it off a state highway because it was dark and

1. This appeal was originally filed in the court of appeals but was transferred to this court pursuant to sections 13–4–102(1)(b) and 13–4–110, C.R.S.1973, because of the defendant's constitutional challenge to section 18–4–409(2)(a), C.R.S.1973 (1978 Repl. Vol. 8).

2. The defendant was charged in a separate count with felony theft, section 18–4–401, C.R.S.1973 (1978 Repl. Vol. 8). This charge was based on the defendant's alleged retention on September 7, 1979 of a $269 deposit received from a customer on the purchase of a used car

from AMC. The court found the defendant not guilty of this charge.

3. AMC had no written agreement with its salesmen on the use of a demonstrator vehicle but, according to the sales manager, AMC's policy was "just something that was understood." He further testified that "[m]ost of the people that worked there had worked in the car business before for some time and pretty well knew an unwritten rule about the use of a demonstrator...."

the taillights were not functioning and because he did not have a valid Colorado driver's license. He then asked Ms. O'Neal, with whom he was living, to pick him up and drive him home. Upon arriving home, O'Neal contacted still another friend and requested the latter person to inform AMC about the location of the vehicle. In this fashion AMC ultimately learned of the vehicle's location and regained possession of it.

At the conclusion of the evidence, the trial court found the defendant guilty of aggravated motor vehicle theft. In its oral ruling the court outlined the elements of the offense, including the culpability requirement of knowingly obtaining or exercising control over the motor vehicle of another without authorization. Specifically addressing the issue of authorization, the court observed that, in spite of AMC's loose policy on the use of demonstrator vehicles by its salesmen, the defendant's act of driving the 1980 Concord to Florida without informing his supervisor or without obtaining specific permission to do so amounted to his exercise of control over the vehicle without authorization and that the defendant's subsequent retention of control exceeded the 72 hour period required for the offense. Having found the defendant guilty under section 18–4–409(2)(a), C.R.S. 1973 (1978 Repl. Vol. 8), the court did not consider the defendant's guilt under the alternative subsection relating to property damage, section 18–4–409(2)(e), C.R.S. 1973 (1980 Supp.).

We first consider the defendant's constitutional challenge to section 18–4–409(2)(a), C.R.S. 1973 (1978 Repl. Vol. 8), and then his argument that the evidence is insufficient to support his conviction.

## II.

■ Section 18–4–409(2)(a), C.R.S. 1973 (1978 Repl. Vol. 8), provides as follows:

"(2) A person commits aggravated motor vehicle theft if he knowingly obtains

or exercises control over the motor vehicle of another without authorization . . . and:

"(a) Retains possession or control of the motor vehicle for more than seventy-two hours."

The defendant argues that the statutory definition of the crime is unconstitutionally vague, that the statutory proscription is overbroad, that the statute unlawfully delegates to third persons the discretion to determine criminal responsibility, and that the statute was applied to him in an unconstitutional manner. We find these arguments untenable.

### A.

■ The defendant's vagueness argument is that the statutory proscription, although purportedly requiring the *mens rea* of "knowingly," is broad enough in its scope to permit convictions for a negligent or mistaken belief in one's right to use or exercise control over another's vehicle. The terms of the statute, however, refute this contention.

■ The culpable mental state for this offense is "knowingly." To act "knowingly" with respect to conduct or a circumstance essential to an offense, the actor must "be aware that his conduct is of such nature or that such circumstance exists." Section 18–1–501(6), C.R.S. 1973 (1978 Repl. Vol. 8). Section 18–1–503(4), C.R.S. 1973 (1978 Repl. Vol. 8), provides that when a statutory definition of a crime prescribes a specified culpable mental state, "that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears." An awareness that one is obtaining or exercising *unauthorized* control over another's property marks the dividing line between criminal knowledge or *mens rea*, on the one hand, and innocent conduct on the other.[4] *See, e.g., People v. Treat*, 193 Colo. 570, 568 P.2d 473 (1977); *People v. McCain*, 191 Colo.

---

4. In contrast to the definition of theft in 18–4–401(1), C.R.S. 1973 (1978 Repl. Vol. 8), aggravated motor vehicle theft is not defined in terms of either a specific intent to permanently deprive or an act which has the effect of permanently depriving another of the use or benefit of the property taken.

229, 552 P.2d 20 (1976); *People v. American Health Care, Inc.*, 42 Colo.App. 209, 591 P.2d 1343 (1979). Section 18–4–409(2)(a) contemplates a culpable mental state involving an awareness by the offender that he is obtaining or exercising control over the vehicle of another and that his control is indeed without authorization.

 This culpability requirement of "knowingly" obtaining or exercising unauthorized control answers the defendant's argument that a conviction for aggravated motor vehicle theft may be based on "criminal negligence." Section 18–4–409(2)(a) simply does not countenance a conviction based on a less culpable mental state than "knowingly," such as "criminal negligence."[5] Similarly, the culpability element of "knowingly" belies the notion that the statute somehow authorizes a conviction based on a mistaken belief in one's authorization to obtain or exercise control over another's vehicle. Section 18–1–504(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8), recognizes a mistaken belief of fact as an affirmative defense when it "negatives the existence of a particular mental state essential to commission of the offense." If any evidence in the case raises the issue of mistake, then "the guilt of the defendant must be established beyond a reasonable doubt as to that issue as well as all other elements of the offense." Section 18–1–407(2), C.R.S. 1973 (1978 Repl. Vol. 8).

### B.

 The defendant also contends that the statute suffers from unconstitutional overbreadth. The overbreadth doctrine prevents the state from regulating conduct by encroaching on basic constitutional rights, such as speech and assembly, which may be within the sweep of the statutory prohibition. *E.g., Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *People v. Bridges*, Colo., 620 P.2d 1 (1980). The defendant, however, has

not presented us with any argument pointing up what constitutional rights have been threatened or the manner in which the statute interferes with those rights. Left with nothing except an unsupported suggestion of impermissible infringement, we reject the overbreadth argument.

### C.

 Next the defendant argues that section 18–4–409(2)(a) unconstitutionally delegates to third persons, such as a car dealer, the discretion to determine the criminal responsibility of another. In contrast to the statutes involved in *People v. Quinn*, 190 Colo. 534, 549 P.2d 1332 (1976) and *People v. Vinnola*, 177 Colo. 405, 494 P.2d 826 (1972), the statute here defines the crime in terms of the offender's conduct and his culpable mental state and does not condition criminal responsibility on the action of a third party after the prohibited conduct already has occurred. The mere reporting of a crime by a third party after its commission plays no part whatever in the statutory definition of the offense and has no effect on what elements the prosecution must prove to establish a statutory violation.

### D.

 The defendant claims an unconstitutional application of the statute to him. His argument is unsupported by the record. The trial court weighed the evidence and determined that the defendant's guilt was established beyond a reasonable doubt as to the essential elements of the crime. Such judicial determination involved no statutory application or construction that arguably interfered with the defendant's rights under the federal or state constitutions. The defendant has failed to establish his constitutional claims with respect to section 18–4–409(2)(a). *See, e.g., People v. Albo*, 195 Colo. 102, 575 P.2d 427 (1978); *People v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974).

---

5. "Criminal negligence" is defined in section 18–1–501(3), C.R.S. 1973 (1978 Repl. Vol. 8):

"A person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists."

## III.

■ We proceed to consider whether the evidence is insufficient as a matter of law to establish the defendant's guilt beyond a reasonable doubt. To withstand a motion for a judgment of acquittal, the prosecution must present evidence which, when viewed in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of a crime beyond a reasonable doubt. *E.g., People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973). "The substantial evidence test affords the same status to circumstantial evidence as to direct evidence, and an exclusively circumstantial case need not exclude every reasonable hypothesis other than guilt to withstand a motion for a judgment of acquittal." *People v. Elkhatib,* Colo., 632 P.2d 275 (1981).

■ Our review of the record satisfies us that the defendant's motion for a judgment of acquittal was properly denied. The prosecution's evidence established that the defendant was assigned a 1980 Concord automobile as a demonstrator model for use during his term of employment with AMC; that the defendant permanently left his employment on September 28, 1979; that thereafter he neither sought nor obtained permission from AMC to use the vehicle; that he drove the vehicle to Florida, exercised control over it for several weeks, and during this period did not contact AMC about the vehicle; and that ultimately the vehicle was recovered by AMC from the state of Kansas in the latter part of October 1979. This evidence, when appropriately viewed, permits a reasonable person to conclude that the defendant knowingly exercised unauthorized control over the 1980 AMC Concord automobile of Ian Steyn, doing business as AMC, and retained control over it for more than seventy-two hours. The prosecution's evidence having established a prima facie case, it was the prerogative of the trial judge to believe or disbelieve the defendant's evidence offered in explanation of his conduct and is not our function to usurp the judge's factfinding prerogative.[6]

The judgment is affirmed.

---

6. The defendant requests that, in the event his arguments for reversal are rejected, we remand the case to the trial court for a specific finding on his culpable mental state. In its finding of guilt, the trial court noted the essential elements of the crime, including the culpable mental state of "knowingly," and concluded that the defendant's guilt as to each element had been established beyond a reasonable doubt. The record does not suggest any judicial misapprehension of the culpability elements of the crime. *See People v. Cardinal,* 197 Colo. 425, 593 P.2d 966 (1979). Crim. P. 23 does not require specific findings of fact in a trial to the court. *See People v. Storey,* 191 Colo. 546, 554 P.2d 694 (1976). The trial court's finding of guilt is supported by the evidence and no purpose would be served by a remand for any additional finding.