The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Toby LEONARD, Defendant–Appellant.

No. 06CA0405.

Colorado Court of Appeals, Div. III.

July 12, 2007.

John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Henderson, Taylor & Rapp, LLP, Todd Taylor, Greeley, Colorado, for Defendant–Appellant.

ORDER AFFIRMED

Opinion by Chief Judge DAVIDSON.

Defendant, Toby Leonard, appeals from the restitution order entered in connection with his plea of guilty, pursuant to a four-year deferred judgment and sentence agreement, to the offense of acting as a commodity handler without a license or surety bond. We affirm.

In 1998, defendant purchased a company that produced bird seed using a variety of seeds purchased from local farmers.

In 2003, several farmers contacted the Colorado Department of Agriculture (DOA) and reported that defendant had not paid them for seed which they had delivered to defendant's business.

DOA representatives informed defendant that, due to the nature of his business, he was required to become licensed as a commodity handler. In July 2003, defendant completed a commodity handler license appli-

cation and paid the license fee. Although defendant was statutorily required to post a $10,000 bond as a condition of licensure, he failed to do so after several insurance companies turned him away because of his poor credit history and the distressed financial condition of his business.

Defendant continued to operate his business without a bond or a license, taking possession of thousands of dollars worth of seed from local farmers and seed merchants. Although defendant promised to pay the farmers and merchants for the seed, he did not do so. In December 2003, defendant closed the business.

Based on this conduct, defendant was charged with acting as a commodity handler without a license or surety bond in violation of § 12–16–221(1)(e), C.R.S.2006, and failing or refusing to make a true and timely accounting of commodities received in violation of § 12–16–221(1)(b), C.R.S.2006.

Pursuant to a plea bargain in which the second charge was dismissed, defendant pleaded guilty—under a four-year deferred judgment and sentence agreement—to acting as a commodity handler without a license or surety bond.

In accordance with the agreement of the parties, the trial court conducted an evidentiary hearing to determine the amount of restitution. At the conclusion of the hearing, the court ordered defendant to pay a total of $83,199.46 to seven farmers and merchants (the victims) for the seed they had delivered to defendant. Defendant then filed this appeal.

## I.

Defendant first argues that the trial court erred by ordering him to pay an aggregate amount of restitution greater than the amount of the bond that he failed to post. We disagree.

"No person shall act as a commodity handler or as an agent for a commodity handler in this state without having first obtained a license from the [DOA]." Section 12–16–203(1), C.R.S.2006. In addition:

> Before any license is issued to any commodity handler, the applicant shall file

with the commissioner a bond executed by the applicant as principal and by a surety company qualified and authorized to do business in this state as a surety or an irrevocable letter of credit meeting the requirements of section 11–35–101.5, C.R.S., in the sum of not less than ten thousand dollars....

Section 12–16–218(1)(a), C.R.S.2006.

Acting "as a commodity handler or agent without having obtained a license or act[ing] as a commodity handler without having filed a surety bond or irrevocable letter of credit" is a class six felony. Section 12–16–221(1)(e).

Although the DOA has authority to require that a commodity handler post a bond or irrevocable letter of credit for more than $10,000, in this case it is undisputed that defendant was required only to post a bond or irrevocable letter for the minimum amount. Thus, according to defendant, because the purpose for requiring a bond or irrevocable letter of credit is to provide a source of recovery for "[a]ny producer or owner within the state of Colorado claiming to be injured by the fraud, deceit, willful negligence, or failure to comply with the provisions of [§ 12–16–201, et seq., C.R.S. 2006] of any commodity handler," § 12–16–218(1)(c)(I), C.R.S.2006, an award of restitution for an amount greater than the required amount of the bond or irrevocable letter of credit amounts to a "windfall" for the victims, which places "them in a better position than they would have been in had [defendant] obtained the $10,000 bond." However, this argument is inconsistent with the supreme court's interpretation of the statutory provisions relating to restitution orders in criminal cases.

"The conditions imposed in [a deferred judgment and sentence] stipulation shall be similar in all respects to conditions permitted as part of probation," § 18–1.3–102(2), C.R.S. 2006, and the probation statute specifies that "[a]s a condition of every sentence to probation, the court shall order that the defendant make full restitution." Section 18–1.3–205, C.R.S.2006.

" 'Restitution' means any pecuniary loss suffered by a victim and includes ... losses

or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." Section 18–1.3–602(3)(a), C.R.S.2006.

■ " 'Victim' means any person aggrieved by the conduct of an offender," § 18–1.3–602(4)(a), C.R.S.2006, and " '[p]roximate cause' has been defined for purposes of restitution as 'a cause which in natural and probable sequence produced the claimed injury' and 'without which the claimed injury would not have been sustained.' " *People in Interest of D.S.L.,* 134 P.3d 522, 527 (Colo.App. 2006) (quoting *People v. Clay,* 74 P.3d 473, 475 (Colo.App.2003)).

■ "A trial court has broad discretion in determining the appropriate terms and conditions of restitution orders. Absent a gross abuse of discretion, the court's ruling will not be disturbed on appeal. . . . The People's burden of proof for establishing the amount of restitution owed is a preponderance of the evidence." *People v. Pagan,* 165 P.3d 724, 729 (Colo.App. 2006) (citations omitted).

In *People v. Milne,* 690 P.2d 829, 832–37 (Colo.1984), the supreme court upheld an order requiring that the defendant—the president of a consumer loan corporation who was convicted of selling securities without a license after he issued interest-paying notes that ultimately were unpaid—pay restitution to the holders of unpaid notes. Noting that the purpose of the statutory requirement for restitution is to "take the profit out of crime and, to the extent practicable, to make the victims of criminal offenses whole," *People v. Milne, supra,* 690 P.2d at 836, the court emphasized the causal connection between the defendant's failure to obtain a license to sell securities and the losses sustained by the victims:

[A] purpose of [the statute requiring that sellers of securities be licensed] is to protect the public from persons who regularly deal in securities transactions. As part of the statutory licensing procedure, the securities commissioner may require information relating to the applicant's business history, financial condition and history, proposed method of doing business, and other matters relating to the character and qualifications of the applicant. The failure to obtain a license in accordance with the statute and the rules enacted by the securities commissioner deprives the public of the minimum level of protection required by the General Assembly for those who sell securities.

The element of sale in [the statute criminalizing the unlicensed sale of securities] is as essential to a conviction as the failure to obtain a license. In this case, it was the defendant's unlicensed sales that caused persons to part with and lose considerable sums of money. As part of defendant's unregulated business activity, he allowed loans to be refinanced without additional collateral. He also applied the proceeds from the sale of recently issued notes to meet payment obligations on other outstanding notes, in a characteristic "Ponzi" financing scheme. As the result of defendant's conduct, the investors suffered "actual, pecuniary damage" within the meaning of [the restitution statute]. As such, the investors were as much the "victims" of the defendant's crime as would be persons who submit to harmful and unnecessary surgery at the hands of one who practices medicine without a license. The imposition of restitution is therefore appropriate following a conviction for selling securities without a license.

*People v. Milne, supra,* 690 P.2d at 836–37 (citations omitted).

■ We read *Milne* as standing for the following proposition: where a defendant commits an offense of engaging in a licensed profession without obtaining the necessary license, all pecuniary losses incurred by persons stemming from regulated business activities with the unlicensed defendant are compensable as restitution in connection with a criminal conviction for engaging in the unlicensed business activity because the reasonable expectation that a person engaged in a licensed occupation is properly licensed—and that transactions with the person will therefore be subject to the various protections which come with governmental regulation—establishes proximate cause for purposes of the restitution statute.

■ Applying that principle to the case at hand, we conclude the trial court's restitution order was based on a proper assessment of the actual damages resulting from defendant's criminal conduct. Defendant obtained possession of the victims' commodities by purporting to act as a licensed commodity handler. Then, as defendant admitted at the restitution hearing, he used the proceeds from the sale of the seed to repay his own creditors rather than to pay the victims. In our view, there is no meaningful distinction between defendant's misallocation of funds obtained through unlicensed business activities and the misallocation at issue in *Milne*.

Moreover, because defendant pleaded guilty to acting as a commodity handler without a license or without a bond *or* irrevocable letter of credit, limiting the victims' restitution to the amount of the bond that defendant failed to post would not take account of the full scope of the criminal conduct to which defendant pleaded guilty. By purporting to act as a licensed commodity handler, defendant effectively represented to the victims that their transactions with him were subject to all the regulatory protections governing a licensed commodity handler, not merely the bond requirement. *See, e.g.,* § 12–16–215, C.R.S.2006 (inspections); § 12–16–216, C.R.S.2006 (coverage of a commodity shortage). In this regard, we note that defendant does not point to any evidence in the record suggesting the victims knew, at the time they tendered their seed, that he was not properly licensed.

Finally, defendant's reliance on *People v. Brigner*, 978 P.2d 163 (Colo.App.1999), is misplaced. In *Brigner*, a division of this court ordered that a restitution award be reduced to take account of the fact that the secured property which the defendant had unlawfully sold without the consent of the secured creditor had decreased in value due to circumstances unrelated to the defendant's criminal conduct. Here, however, the court based the value of the seed on the prices that the parties agreed to at the time the loads of seed were delivered, and there is no evidence in the record indicating that the value of the seed diminished thereafter.

## II.

■ Defendant next argues that the trial court erred by not allowing an offset equal to the value of three pieces of farm equipment that he gave to one of the victims as partial repayment for a load of seed. We disagree.

[T]he fact finder, not an appellate court, determines the credibility of witnesses, and only when testimony is "so palpably incredible and so totally unbelievable" may we reject it as a matter of law. Testimony is incredible as a matter of law when a "witness describes events she could not possibly have seen or that are not possible under the laws of nature." However, testimony that is merely biased, conflicting, or inconsistent is not incredible as a matter of law.

*People v. Dash*, 104 P.3d 286, 289 (Colo.App. 2004) (citations omitted) (quoting *Kogan v. People*, 756 P.2d 945, 950 (Colo.1988), and *People v. Minjarez*, 81 P.3d 348, 355 (Colo. 2003)).

Here, both defendant and the victim testified that defendant gave the victim three pieces of farm equipment as partial repayment for the victim's seed. Although defendant testified the victim later returned one piece of machinery, the victim testified that he "took everything back" to defendant.

It was the trial court's prerogative to reconcile this conflict in the testimony, and we cannot say the victim's testimony was incredible as a matter of law. *See People v. Dash, supra.* Accordingly, we conclude the prosecution carried its burden of disproving defendant's claim that he was entitled to an offset.

The order is affirmed.

METZGER * and RULAND *, JJ., concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

