**UNITED STATES of America,**

**v.**

**Hayim REGENSBERG, Defendant.**

**No. 08 Cr. 0219 (VM).**

United States District Court, S.D. New York.

March 23, 2009.

David Mark Siegal, U.S. Attorney's Office, New York, NY, for United States of America.

Michael Sangyun Kim, Kobre & Kim LLP, New York, NY, for Defendant.

## *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Defendant Hayim Regensberg ("Regensberg") moves the Court pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure for an order directing the Government to either to elect or to dismiss certain counts of Superseding Indictment S1 08 Cr. 219 (VM) (the "Indictment"). First, Regensberg argues that Counts One and Two, which charge Regensberg with securities fraud, are multiplicitous because they charge a single offense as two separate offenses. Second, Regensberg argues that Counts Three through Eight, which `charge Regensberg with wire fraud, and the securities fraud counts stated in Counts One and Two are multiplicitous because the wire fraud counts are lesser-included offenses of the securities fraud counts. For the reasons set forth below, Regensberg's motion is DENIED.

## I. *BACKGROUND*

In February 2009, a grand jury in this District returned the Indictment, superseding an indictment returned in March 2008. The Indictment charges that between 2004 and September 2007, Regensberg engaged in a scheme to defraud members of the investing public, divert investor funds, and perpetrate a "Ponzi" scheme. Specifically, the Indictment charges that Regensberg "made, or caused others to make, false and fraudulent representations to investors and potential investors to induce them to entrust their monies to Regensberg for the purported purpose of investing in either or both of two investment vehicles." (Indictment ¶ 4.) The Indictment then specifies that Regensberg's false and fraudulent representations included claims that he would invest investor funds in: (1) a lending product, by which Regensberg would lend pooled investor funds to institutions engaged in securities trading ("Trading Firms"), which in turn would pay an above-market fixed rate of return for the use of those loaned funds with little risk (the "Lending Product"); or (2) initial public offerings ("IPOs") of stock traded on an international stock exchange, in a manner that would guarantee investors a quick and high rate of return with little risk (the "IPO Product"). (*Id.*)

As to the Lending Product, the indictment charges that from 2004 to September 2007, Regensberg "made and caused others to make false and fraudulent representations" regarding how funds in the Lending Product would be invested. For example, Regensberg told investors that their Lending Product funds would be "loaned" to Trading Firms, which in turn would use those funds as collateral relating to leveraged investments being made by those Trading Firms. Regensberg represented that these funds would not be invested by the Trading Firms, but held as collateral—a service for which the Trading Firms would pay a fee. Regensberg told investors that their Lending Product funds would be subject to low risk, and he promised investors "a high, fixed annual rate of return, up to as high as 18 percent per year." Regensberg "typically" documented this promised return with a promissory note stating the fixed return that would be paid in monthly installments, and promising to return the principal investment on the earlier of either the fifth anniversary of the promissory note's issuance or within three weeks of demand. The Indictment charges that Regensberg did not invest funds in any Lending Product, but rather: "(a) invested substantial amounts of investors' funds in highly speculative and risky securities, including ... stock options of companies whose stock was listed on domestic exchanges, (b) used later-investors' funds to pay money owed to earlier investors, or (c) misappropriated investor funds to pay for

his and his family's own personal expenses." (*Id.* ¶ 5.)

As to the IPO Product, the Indictment charges that from early 2006 to September 2007, Regensberg "made and caused others to make false and fraudulent representations" regarding how funds in the IPO Product would be invested. Specifically, Regensberg represented to IPO Product investors that he was able to obtain IPO stock of companies listed on an international stock exchange before it was available to the public, and that he would sell the stock at the earliest possible moment after it became public, allowing him to achieve quick returns of between 5 percent and 15 percent for his investors. Regensberg further represented that he had consistently and successfully used this strategy in the past. The Indictment charges, however, that Regensberg failed to invest funds in any IPO stock, and had no such track record; instead, he diverted IPO investor funds by "(a) investing substantial amounts of investors' funds in highly speculative and risky securities, including ... stock options of companies whose stock was listed on domestic exchanges, (b) paying debts owed to earlier investors, or (c) paying for his and his family's own personal expenses." (*Id.* ¶ 6.)

The Indictment further charges that, to conceal his failure to generate any IPO Product profits, and to conceal the unauthorized expenditure of funds, Regensberg falsely represented to IPO Product investors, both orally and in writing, "(a) that their funds had been invested in IPO stock of companies traded on an overseas exchange, and (b) that their investments had generated profits." (*Id.* ¶ 7.)

Count One of the Indictment charges Regensberg with securities fraud in connection with the purchase and sale of the Lending Product, and Count Two charges Regensberg with securities fraud in connection with the purchase and sale of the IPO Product. (*Id.* ¶¶ 11, 13.) Counts Three through Eight charge Regensberg with wire fraud, each alleging that on six separate occasions between May 9, 2007 and August 1, 2007, Regensberg transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce funds ranging from approximately $4,275 to $500,000 in connection with his scheme to defraud investors. (*Id.* ¶ 15.)

## II. DISCUSSION

### A. COUNTS ONE AND TWO ARE NOT MULTIPLICITOUS

■ Counts One and Two both charge Regensberg with securities fraud in violation of 15 U.S.C. §§ 78j(b) & 78ff ("Section 10(b)")[1] and 17 C.F.R. § 240.10b–5 ("Rule 10b–5").[2] Regensberg argues that Counts One and Two are multiplicitous "because

---

1. Section 10(b), in relevant part, makes it unlawful to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b).

2. Rule 10b–5, which implements Section 10(b), provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

they charge a single offense—a scheme to defraud investors by fraudulently inducing them to invest in one of two investment vehicles—as two separate offenses." (Defendant's Memorandum of Law in Support of His Pre–Trial Motion, dated March 9, 2009 ("Def. Mem."), at 1.) According to Regensberg, the Government charged him "with engaging in identical conduct in each count, separating them only as to the two alleged securities which induced investments" (*Id.* at 4.) In order to remedy this supposed multiplicity, Regensberg requests that the Court order the Government to elect between Counts One and Two.

The Government argues that Counts One and Two embody groups of two separate transactions that are governed by different terms and conditions, involved different buyers, and occurred over different time periods. (*See* Government's Memorandum of Law in Opposition to Defendant Hayim Regensberg's Pre–Trial Motion, dated March 12, 2009 ("Gov't Opp."), at 5–7.) Thus, according to the Government, the counts are not multiplicitous.[3]

■ "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir.1999). A multiplicitous indictment "violates the Double Jeopardy clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once." *Id.* It also "may improperly prejudice a jury by suggesting that a defendant committed not one but several crimes." *United States v. Reed*, 639 F.2d 896, 904 (2d Cir.1981).

■ "It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." *Chacko*, 169 F.3d at 146. When the same statutory violation is charged twice, as is the case with Counts One and Two, "the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir.2004) (*quoting Bell v. United States*, 349 U.S. 81, 83–84, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).[4]

---

**3.** The Government also argues that Regensberg's motion is premature because "the defendant's right not to suffer multiple punishments for the same offense will be protected by having the court enter judgment on only one of the multiplicitous counts." *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir.2006) (per curiam); *see also United States v. Ferguson*, 478 F.Supp.2d 220, 233 (D.Conn. 2007) ("[A] defendant's Double Jeopardy rights are only at risk after he is convicted on multiplicitous charges." (*citing Josephberg*)). While *Josephberg* instructs that it may be premature for a court to dismiss possibly multiplicitous charges pre-trial, it is not premature for a court to refuse to dismiss charges that facially are not multiplicitous. .

**4.** Contrary to Regensberg's assumption (*see* Def. Mem. at 5), *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is not applicable to the determination of whether Counts One and Two, which charge Regensberg with violations of the same statutory scheme, are multiplicitous. As the Second Circuit stated in *Ansaldi*:

> Ordinarily, courts apply the so-called "*Blockburger* test" to determine whether or not two charged offenses constitute different crimes. That analysis is inappropriate in this case, because there is only one statute at issue, and so, nothing to compare. Rather than determining whether one act falls within two distinct statutes, as in *Blockburger*, we are asking whether two acts constitute one statutory offense.

372 F.3d at 125 n. 3 (citations omitted); *see also Haji v. Miller*, 584 F.Supp.2d 498, 516 (E.D.N.Y.2008); *United States v. Turner*, No. CR05–355C, 2007 WL 1300462, at *4 (W.D.Wash. May 1, 2007) (rejecting application of *Blockburger* because a case "involving multiple prosecutions under a single statute is

In *United States v. Rigas,* 281 F.Supp.2d 660 (S.D.N.Y.2003), this Court addressed an argument almost identical to that posed by Regensberg here. In *Rigas,* the defendants were charged with fifteen counts of securities fraud in violation of Section 10(b) and Rule 10b–5, in connection with the purchase and sale of fifteen different classes of securities. The defendants sought an order requiring the Government to elect one count on which to proceed, and to dismiss the remaining counts, based on the premise that the fraudulent "device" at issue was a single scheme to defraud. *Id.* at 665–66.

The *Rigas* Court examined the language of Section 10(b) and Rule 10b–5, and determined that while Section 10(b) prohibits the use of "any manipulative or deceptive device" in connection with the purchase or sale of a security, the forbidden act may take the form of: (1) a fraudulent scheme; (2) a false statement of material fact or material omission; or (3) a fraudulent act or practice. *Id.* at 666–67. Based on this language, the Court understood the proper unit of prosecution for violations of Section 10(b) and Rule 10b–5 as not limited to fraudulent schemes, but also permitting prosecution of

> other fraudulent activities that are connected to the purchase or sale of any security, which may be generally described as "transactions." Therefore, multiplicity principles do not require, in every case, that the separate counts of an indictment charge separate and discrete securities fraud schemes. Rather, fraudulent transactions involving different securities, even if made with the intent of furthering a single overall conspiracy, may establish the basis for separate counts of an indictment under Section 10(b) and Rule 10b–5.

*Id.* at 667 (citations omitted); *see also United States v. Langford,* 946 F.2d 798,

803 (11th Cir.1991) ("The allowable unit of prosecution under section 78j(b) is, therefore, the use of a manipulative device or contrivance, which, as clarified by the SEC in Rule 10b–5, does not have to be the complete scheme to defraud; rather, it can be any false statement of material fact in connection with a discrete purchase or sale of a security.").

■ The Court agrees with *Rigas* and *Langford* in their conclusions that the allowable unit of prosecution for securities fraud need not be limited to an overall scheme to defraud investors. Rather, the language of Section 10(b), as implemented by Rule 10b–5, evinces Congress's intent to permit the Government to charge separate fraudulent transactions in separate counts without violating Multiplicity principles. The text of Rule 10b–5 makes unlawful, not only a "scheme" to defraud, but also false statements of material facts, material omissions, and fraudulent acts in connection with the purchase or sale of any security. *See* 17 C.F.R. § 240.10b–5. The inclusion of acts other than a "scheme" to defraud indicates that Congress intended to allow for the permissible unit of prosecution for securities fraud to include "fraudulent transactions involving different securities, even if made with the intent of furthering a single overall conspiracy." *Rigas,* 281 F.Supp.2d at 667.

In this case, Counts One and Two are based on two separate and distinct groups of transactions involving different securities. As to the Lending Product, the Indictment charges that Regensberg told investors their investment would be "loaned" to Trading Firms which in turn would use those funds as collateral, thereby producing a fixed annual rate of as high as 18 percent per year. The Indictment also charges that Regensberg documented the promised return with a promissory note

governed by the question of what Congress    has made the allowable unit of prosecution").

that provided lending Product investors with a timetable by which their investments would be returned. (Indictment ¶ 5.) As to the IPO Product, the Indictment charges that from early 2006 to September 2007, Regensberg told investors he would obtain IPO stocks of companies before they were available to the public, and he would sell that stock right after it was available to the public. The Indictment further charges that IPO Product investors were promised that they would receive quick returns of between 5 percent and 15 percent within weeks of the IPO and that Regensberg told IPO Product investors he successfully used this strategy in the past. (*Id.* ¶ 6.) Contrary to Regensberg's argument that the Government has charged Regensberg "with engaging in identical, conduct in each count" (Def. Mem. at 4), the Government has laid out two forms of conduct that: (1) covered different: securities; (2) were governed by different terms and conditions; (3) involved different alleged misrepresentations; (4) provided different promises of risks and returns; (5) involved different durations of investment; and (6) occurred over different (though overlapping) time periods. Indeed, the descriptions of the two groups of transactions—one involving use of funds as collateral for the Trading Firms and the other involving short-term purchases of IPO stock of companies listed on international stock exchanges—are entirely unrelated, except that both transactions were allegedly conducted by Regensberg. The allowable unit of prosecution for Section 10(b) and Rule 10b–5 violations permits the Government to charge Regensberg with two counts of securities fraud, even if he had one "complete scheme to defraud," *Langford,* 946 F.2d at 803.[5] Therefore, on its face, the Indictment is not multiplicitous as to Counts One and Two.

## B. THE WIRE FRAUD COUNTS AND THE SECURITIES FRAUD COUNTS ARE NOT MULTIPLICITOUS

■ Counts Three through Eight change Regensberg with wire fraud in violation of 18 U.S.C. § 1343. Regensberg argues that the wire fraud counts and the securities fraud counts are multiplicitous because "the wire fraud counts are effectively subsumed by the securities fraud change as a lesser included offense." (Def. Mem. at 5.) According to Regensberg, "the Government intends to prove the jurisdictional element for each of these [securities fraud] offenses based on wire fraud," and the wire fraud elements are thus subsumed by the securities fraud elements. (*Id.* at 7.)

The Government counters that the wire fraud and securities fraud charges are not multiplicitous "because there is an element in each offense that is not contained in the other." (Gov't Opp. at 10.) According to

---

**5.** The Court rejects Regensberg's argument that because the Indictment charges him with making false representations that "investor funds would be invested in a lending product *or* IPO's [sic]," use of the term "or" instead of "and" renders the Indictment multiplicitous. (Defendant's Reply Memorandum of Law in Support of His Pre–Trial Motion, dated March 16, 2009 ("Reply Mem."), at 2 (emphasis in original).) While paragraph 4 of the Indictment states that Regensberg induced potential investors into "investing in either or both of two investment vehicles," paragraph 5 then specifies the allegedly fraudulent and false representations made as to the Lending Product only, and paragraphs 6 and 7 specify the allegedly fraudulent and false representations made as to the IPO Product only. Further, each count's statutory allegation is limited to one of the two products. (*See* Indictment ¶¶ 11, 13.) Each count therefore meets the requirement that it be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1).

the Government, the form of proof the Government intends to introduce at trial has no bearing on multiplicity analysis because the Court must compare the statutory elements at issue, not the factual proof the Government may offer to establish the crimes. (*Id.* at 12–13.)

■ To assess whether two offenses charged separately in an indictment are really one offense charged twice, courts apply the *"Blockburger* test." *See, e.g., Chacko*, 169 F.3d at 146 (*citing Blockburger*, 284 U.S. 299, 52 S.Ct. 180; *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)). "The *Blockburger* test examines whether each charged offense contains an element not contained in the other charged offense. If there is an element in each offense that is not contained in the other, they are not the same for the purposes of double jeopardy, and they can both be prosecuted." *Chacko*, 169 F.3d at 146 (citations omitted); *see also United States v. Irving*, 554 F.3d 64, 76 (2d Cir.2009) ("As to whether two convictions are for the same offense where 'the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied ... is whether each provision requires proof of a fact which the other does not.'" (*quoting Rutledge v. United States*, 517 U.S. 292, 297, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996))).[6]

■ In applying the *Blockburger* test, the Court focuses not on the proof the Government may present at trial, but rather on the statutory elements of the offenses. *See, e.g., Albernaz*, 450 U.S. 333, 338, 101 S.Ct. 1137 (1981) ("[T]he Court's application of the test focuses on the statu-

tory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." (*quoting Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975))); *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) ("We recognized that the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial."); *United States v. Khalil*, 214 F.3d 111, 118 (2d Cir.2000) (describing the *Blockburger* test as "focus[ing] on the elements reflected in the respective statutory sections"); *United States v. Tomero*, 473 F.Supp.2d 609, 613–14 (S.D.N.Y.2007) ("[The *Blockburger* test] does not look into the conduct underlying the charges, but rather only to the elements required to support a conviction under each statutory provision."); *United States v. Hall*, 419 F.Supp.2d 279, 285 (E.D.N.Y.2005) ("[The *Blockburger* test] focuses on the statutory elements of the offenses, not the actual evidence to be introduced at trial with respect to each offense." (*citing Vitale* )).

Regensberg argues that because the Government "intends to prove the jurisdictional element for each of these offenses based on wire fraud[,] ... the were fraud elements are subsumed by the securities fraud elements." (Def. Mem. at 7.) The Court disagrees. As the cases cited above definitively establish, how the Government intends to prove its case is irrelevant to *Blockburger* analysis. *"Blockburger* focuses on the means by which the elements of

---

**6.** If the Court determines that the securities fraud and wire fraud charges are distinct under the *Blockburger* test, then Regensberg's multiplicity challenge fails absent a clear indication of Congressional intent to bar prosecution under both statutes. *See Reed*, 639 F.2d at 906 ("[W]hen the *Blockburger* test for multiplicity has been satisfied, and there is no evidence of congressional intent to the contrary, authority to impose cumulative penalties is presumed to be intended." (citation omitted)).

the crime could possibly be satisfied, not the proof the government will offer at trial for each charge. If one crime could be proven without necessarily establishing the other, then there are two separate offenses." *Ferguson,* 478 F.Supp.2d at 234; *see also Chacko,* 169 F.3d at 148 n. 6 (interpreting *Blockburger* as requiring that there be a way to violate either statute without violating the other); *United States v. Victor Teicher & Co.,* 726 F.Supp. 1424, 1437 (S.D.N.Y.1989) (finding an indictment charging securities fraud and mail fraud not to be multiplicitous on its face because use of the mails is "a fact not required to prove a 10b–5 violation").

The Second Circuit has held that even if both crimes at issue are based on identical facts, the focus must remain on the statutory elements. *See, e.g., United States v. Biasucci,* 786 F.2d 504, 516 (2d Cir.1986) ("If each *statute* requires proof of a fact that the other does not, the *Blockburger* test is satisfied, even if the same proof is used at trial to establish both crimes." (emphasis in original)); *United States v. Langella,* 776 F.2d 1078, 1082 (2d Cir.1985) (holding that even if both convictions were based on identical conduct, "*Albernaz* requires us to focus on the provisions of the statutes involved, rather than on the evidence adduced at trial"); *cf. Bald Eagle Area School Dist. v. Keystone Fin., Inc.,* 189 F.3d 321, 330 (3d Cir.1999) ("[T]he same set of facts can support convictions for mail fraud, wire fraud, bank fraud and securities fraud without giving rise to any multiplicity problems. Each of those offenses requires proof of a fact which the others do not." (citations omitted)).

Having established that the wire fraud counts and the securities fraud counts will not be deemed multiplicitous "if there is an element in each offense that is not contained in the other," *Chacko,* 169 F.3d at 146, even if both sets of counts are based on identical facts, the Court now turns its attention to comparing the elements of the statutes at hand. The elements of securities fraud, as charged in Counts One and Two, are:

First, that in connection with the purchase or sale of [securities] the defendant did any one or more of the following:

(1) employed a device, scheme or artifice to defraud, or

(2) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading, or

(3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.

Second, that the defendant acted willfully, knowingly and with the intent to defraud.

Third, that the defendant knowingly used, or caused to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.

Sand et al., *Modern Federal Jury Instructions* (2008), Instr. 57–20. The elements of wire fraud, as charged in Counts Three through Eight, are:

First, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the indictment.

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud.

Third, that in execution of that scheme, the defendant used or caused use of

interstate wires, as specified in the indictment.

*Id.,* Instr. 44–3. Looking to the statutory elements of the charges, the *Blockburger* test establishes that the wire fraud counts and the securities fraud counts alleged against Regensberg are not multiplicitous because each contains an element that is not contained in the other. Securities fraud requires a showing of fraud in connect ion with the purchase or sale of any security—an element not required to prove wire fraud. Wire fraud requires a showing of use of interstate wires—an element not required to prove securities fraud.

Other courts have arrived at the same conclusion under similar circumstances. In *United States v. Victor Teicher & Co.,* 726 F.Supp. 1424 (S.D.N.Y.1989), for example, the court found the indictment charging the defendant with securities fraud and mail fraud to not be multiplicitous on its face because

> The 10b–5 charge ... requires a showing of fraud in connection with the purchase or sale of any security, whereas securities need not be involved in order to prove mail fraud. In order to prove the mail fraud violation ... the government must establish use of the mails in furtherance of the alleged scheme, 18 U.S.C. § 1341, a fact not required to prove a 10k–5 violation.

*Id.* at 1437; *see also Reed,* 639 F.2d at 905;[7] *Bald Eagle Area School Dist.,* 189 F.3d at 330; *United States v. Faulhaber,*

929 F.2d 16, 19 (1st Cir.1991). For the same reasons, the Indictment is not multiplicitous on its face as to the securities fraud counts and wire fraud counts.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 37) of defendant Hayim Regensberg for an order directing the Government to elect to proceed on either Count One or Two of Superseding Indictment S1 08 Cr. 219(VM), and to dismiss Counts Three through Eight, is DENIED.

**SO ORDERED.**

---

7. In *Reed,* the Second Circuit noted that the mail fraud and securities fraud counts at issue "contained different elements and each could have stood alone. While use of the postal service naturally was an essential element of the mail fraud counts, use of the mails was not necessary of the securities fraud count since the Government relied on interstate telephone calls ... as the jurisdictional element for the securities fraud violation." 639 F.2d at 905. While Regensberg makes much of the fact that the Government there relied on telephone calls and not use of the mails as the jurisdictional element (*see* Def. Mem. at 7; Reply Mem. at 5), *Reed* does not state that the jurisdictional element must be proven by an non-overlapping element; rather, it points to the use of interstate telephone calls to support its holding that "use of the mails was not *necessary* for the securities fraud count." *Reed,* 639 F.2d at 905 (emphasis added). Similarly, use of interstate wires is not a "necessary" element of securities fraud.