The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 14, 2018

## 2018COA83

## No. 14CA1332, People v. Thompson — Crimes — Securities — Fraud and Other Prohibited Conduct

A division of the court of appeals applies the family
resemblance test, introduced in Colorado by *People v. Mendenhall*,
2015 COA 107M, to conclude that substantial evidence supports (1)
a decision that the promissory note is a security and (2) the
criminal conviction for securities fraud.  The division further
concludes that the laws regarding the definition of a security and
the unit of prosecution for securities fraud were not well settled at
the time of defendant's conviction, and, because these issues were
not raised before the trial court, any error with respect to these laws
was not obvious and does not constitute reversible error.  The
division affirms the conviction and sentence for two counts of
securities fraud and one count of theft.

Court of Appeals No. 14CA1332
Douglas County District Court No. 12CR277
Honorable Paul A. King, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Steven Curtis Thompson,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE RICHMAN
Webb and Fox, JJ., concur

Announced June 14, 2018

Cynthia H. Coffman, Attorney General, Nicole D. Wiggins, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Porter-Merrill , Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Steven Curtis Thompson, appeals the judgment of conviction entered upon jury verdicts finding him guilty of two counts of securities fraud and one count of theft.  We affirm.

## I.  Background

¶ 2    The People charged defendant based on transactions he had entered into with the victims, Tom and Debbie Witt (the Witts).  Defendant was the sole member of SGD Timber Canyon LLC, (SGD), which held an interest in sixty-three undeveloped lots in the Timber Ridge subdivision.  By October 2009, these lots were in foreclosure, and in February 2010, SGD filed for bankruptcy.  Defendant did not disclose either of these facts to the Witts when he negotiated the transactions that gave rise to this case.

¶ 3    The Witts loaned defendant $200,000 to acquire a lot in Timber Ridge and another $200,000 for construction of a home on the lot, with the understanding that the loans would be repaid with a profit share of as much as $400,000 when the home was sold to a prequalified buyer.  In September 2010, the Witts wired $400,000 to defendant's accounts.

¶ 4    Later, at defendant's urging, the Witts increased the loan amount to $2.4 million and converted their investment into a

1

"bridge loan" to defendant, who represented that the proceeds would be used for continued development of Timber Ridge. Defendant told the Witts that the investment would be "no risk" to them and that they would receive a guaranteed profit. He suggested that the investment was a "no brainer" because he would secure the loan with other valuable property he owned. The Witts agreed to the new arrangement because they felt it was a "safer opportunity."

¶ 5    The Witts wired an additional $2 million to defendant's account in October 2010, and the parties executed a promissory note and guarantee agreement. Pursuant to the documents, defendant agreed to repay the loan with a "profit" of $240,000, all bank fees, and 8% annual interest by January 2011. The promissory note was "secured by" defendant's "primary and second residences," with collateral to convert to twenty-four lots in Timber Ridge "upon closing and final purchase of Timber Ridge."

¶ 6    Defendant did not tell the Witts that the collateralized properties were "heavily leveraged." He incorrectly listed the address of his "second residence" on the note. He represented the value of the Timber Ridge development to be $31 million, but

2

mortgagee Flagstar Bank estimated the market value at $6.75 million. He did not reveal that Flagstar had initiated foreclosure proceedings, which had been delayed by SGD's bankruptcy petition. The Witts testified that they would not have given any money to defendant had they known his true financial condition.

¶ 7 Defendant used the money on items not related to Timber Ridge, including payment of his own attorney fees, checks made out to himself or for "cash," and paying off the note on, and making improvements to, his "second residence."

¶ 8 In December 2010, Flagstar Bank completed foreclosure proceedings. Defendant did not tell the Witts of the foreclosure and instead told them that he was "moving forward" with the property. But he never developed the property in Timber Ridge.

¶ 9 In January 2011, when the Witts' note came due, defendant defaulted on the payment. He attempted to negotiate a new note with them, offering additional collateral, but the Witts refused. Defendant thereafter filed for personal bankruptcy, and his "primary residence" was sold at a public trustee sale. The Witts did not receive any money from the sale. Defendant eventually repaid

only $70,000 to the Witts. The Witts brought a civil suit against defendant, but did not recover any further monies from him.

¶ 10    The People charged defendant with two counts of securities fraud, under sections 11-51-501(1)(b) and (1)(c), C.R.S. 2017, and one count of theft under section 18-4-401(1)(b), C.R.S. 2017. Defendant's theory of defense was that he lacked the mens rea for the charged offenses. He argued that he was unable to repay the Witts because his business plan had failed.

¶ 11    A jury found defendant guilty of all three counts. The trial court sentenced him to twelve years in the custody of the Department of Corrections for each of the securities counts, to be served concurrently, and eighteen years for the theft conviction, to be served consecutively to the other sentences.

¶ 12    On appeal, defendant claims that (1) insufficient evidence supports his securities fraud convictions; (2) the trial court erred by tendering an inaccurate jury instruction regarding the definition of a security; (3) insufficient evidence supports his theft conviction; (4) the trial court erred by admitting propensity evidence; (5) the two securities convictions must be merged; and (6) his sentences must

all run concurrently.  We address and reject each contention in turn.

## II.  Sufficient Evidence of Securities Fraud

¶ 13    First, defendant claims that the evidence is insufficient to support his securities fraud convictions because the promissory note and guarantee he provided to the Witts do not constitute a security.  The jury was instructed, as relevant here and pursuant to section 11-51-201(17), C.R.S. 2017, that security "means any note, . . . or . . . guarantee of. . . any of the foregoing."  Defendant correctly states that securities fraud cannot occur absent a security and argues that, despite the statutory definition, not all notes are securities.  *See People v. Mendenhall*, 2015 COA 107M.

## A.  Definition of a Security

¶ 14    The securities fraud statute requires that fraud must be perpetrated in connection with the offer, sale, or purchase of any security.  § 11-51-501(1).  At the time of defendant's trial, the test for determining whether a note was a security was "the presence of an investment in a common enterprise that is premised on a reasonable expectation of profits to be derived from the entrepren[e]urial or managerial efforts of others."  *People v. Milne,*

5

690 P.2d 829, 833 (Colo. 1984); *see also Sec. & Exch. Comm'n v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946) ("The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."). In *Milne*, the court concluded that the notes issued by the defendant were securities because the noteholders (1) "entrusted money with the defendant in return for 'investment notes,' with the expectation of receiving periodic interest payments in addition to repayment of the principal amount"; (2) "invested with the primary purpose of receiving profits"; and (3) "had no ability to control or manage the funds they invested or otherwise ensure that their promised return was actually paid." 690 P.2d at 833-34.

¶ 15   The federal definition of securities, on which Colorado's definition is based, is purposely broad "to regulate *investments*, in whatever form they are made and by whatever name they are called." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990). Recognizing "the virtually limitless scope of human ingenuity, especially in the creation of 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits,'" Congress enacted a definition of "security" sufficiently

6

broad to encompass virtually any instrument that might be sold as an investment. *Id.* at 60-61 (citation omitted).

¶ 16    In 2015, the year after defendant's trial, a division of this court held that the "family resemblance" test adopted by the Supreme Court in *Reves* applies to determine when a note is a security under the Colorado Securities Act (CSA). *Mendenhall*, ¶ 37.[1]

¶ 17    Under the family resemblance test, a note is presumed to be a security, but that presumption may be rebutted by a showing that the note strongly resembles instruments such as

> notes delivered in consumer financing; notes secured by a mortgage on a home; short-term notes secured by a lien on a small business or some of its assets; notes evidencing a "character" loan to a bank customer; short-term notes secured by an assignment of accounts receivable; notes which simply formalize an open-account debt incurred in the ordinary course of business; and notes evidencing loans by commercial banks for current operations.

---

[1] In *Reves v. Ernst & Young*, 494 U.S. 56, 64 (1990), the Supreme Court did not overrule *Securities & Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946), but distinguished it on the grounds that *Howey* addressed "investment contracts" rather than notes. The division in *People v. Mendenhall*, 2015 COA 107M, did not cite *Milne* or *Howey* or distinguish the facts of those cases. The People do not contest resolving this issue based on *Mendenhall*.

7

*Id.* at ¶ 33.  This showing may be established by four factors, which we will describe and analyze below.  *See id.* at ¶ 34.

B.  Standard of Review

¶ 18    Defendant did not argue at trial that his promissory note was not a security, or that not all notes are securities.  But he frames his claim on appeal as a sufficiency of the evidence claim and asserts that preservation is "not required."  Though he moved for judgment of acquittal, he only argued that the evidence was generally insufficient to support a finding of guilt on any of the charges.  The People agree with defendant's statement regarding issue preservation.

¶ 19    Ordinarily, a defendant may raise a sufficiency claim for the first time on appeal.  *People v. Garcia*, 2012 COA 79, ¶ 35.  When reviewing for sufficiency, we view the evidence in the light most favorable to the prosecution to determine if the conviction was supported beyond a reasonable doubt.  *Id.* at ¶ 34.  But defendant's argument is no ordinary sufficiency challenge; rather, his claim is premised solely on a novel interpretation of the securities fraud statute.

8

¶ 20     Some divisions of this court have held that when a defendant does not raise a sufficiency of evidence claim turning on a statutory interpretation in the trial court, his argument on appeal provides a basis for is reversal only if any error is plain. *See People v. Kadell*, 2017 COA 124; *People v. Maestas*, (Colo. App. No. 11CA2084, Jan. 15, 2015) (not published pursuant to C.A.R. 35(f)) (*cert. granted* Oct. 26, 2015); *People v. Lacallo*, 2014 COA 78, ¶¶ 6, 20.

¶ 21     Other divisions have held that even in absence of preservation, we may reverse a conviction if it fails the substantial evidence test. *See People v. McCoy*, 2015 COA 76M, ¶ 37 (*cert. granted* Oct. 3, 2016).

¶ 22     We need not resolve this conflict, because we conclude that even applying the broader substantial evidence test, defendant's claim fails.

## C.  Analysis

¶ 23     Defendant does not argue that applying the definition of a security as it existed at the time of his trial — the "presence of an investment in a common enterprise that is premised on a reasonable expectation of profits to be derived from the entrepren[e]urial or managerial efforts of others" — was not

9

sufficiently established by the evidence. *Milne*, 690 P.2d at 833. He merely argues that his note was not a security (1) because it was for a term of less than nine months; and (2) it strongly resembles a note that is not a security under the family resemblance test, established in Colorado by *Mendenhall*, because it was an unconditional personal loan.

¶ 24    We reject defendant's first argument. Under *Reves*, a note is presumed to be a security. 494 U.S. at 65. Citing a second circuit case, defendant argues that the presumption only applies if the note is for a period of longer than nine months. *See Exch. Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976). But *Reves* explicitly declined to decide the question whether a note for a term of less than nine months was excepted from the presumption. 494 U.S. at 71. And *Mendenhall* makes no mention that the note must extend for at least nine months to be presumed a security. *See Mendenhall*, ¶ 32. Further, other circuit courts have held that the presumption does apply to notes maturing in less than nine months unless they are commercial paper. *See, e.g., Sec. & Exch. Comm'n v. Reynolds Enters., Inc.*, 952 F.2d 1125, 1131-32 (9th Cir. 1991) (finding nine-month exception does not apply to notes that

10

are "not commercial paper"); *Holloway v. Peat, Marwick, Mitchell & Co.*, 900 F.2d 1485, 1488-89 (10th Cir. 1990) (holding that exception is limited to "prime quality negotiable commercial paper of a type not ordinarily purchased by the general public"); *Sanders v. John Nuveen & Co.*, 463 F.2d 1075, 1079-80 (7th Cir. 1972) (same).

¶ 25    Nor do we agree with defendant's argument that consideration of the family resemblance factors is sufficient to rebut the presumption that the promissory note is a security.  Instead, we conclude that three of the four factors support a conclusion that the promissory note is a security.

¶ 26    The four factors are described as follows:

> First, we examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it.  If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a "security."  If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose, on the other hand, the note is less sensibly described as a "security."

11

> Second, we examine the "plan of distribution" of the instrument, to determine whether it is an instrument in which there is "common trading for speculation or investment[.]"
>
> Third, we examine the reasonable expectations of the investing public: The Court will consider instruments to be "securities" on the basis of such public expectations, even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not "securities" as used in that transaction.
>
> Finally, we examine whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary.

*Reves*, 494 U.S. at 66-67 (citations omitted).

¶ 27    With respect to the first factor, based on the Witts' testimony alone, a reasonable jury could infer that defendant's purpose was to raise money for the development of Timber Ridge properties and that the Witts' interest was primarily to profit from advancing money to defendant.  There was no suggestion that the Witts were purchasing a "minor asset" or a consumer good.  The note promises that defendant will repay the $2.4 million, in addition to *$240,000*

12

*profit*, fees, and interest.  (Emphasis added.)  Under this factor, the note "is likely to be a 'security.'"  *Id.* at 66.

¶ 28     As to the second factor, the record does not include any evidence that the instrument obtained by the Witts was traded under a "plan of distribution."  But a transaction between only two entities may still be a security.  *See Nat'l Bank of Yugoslavia v. Drexel Burnham Lambert, Inc.*, 768 F. Supp. 1010, 1015-16 (S.D.N.Y. 1991) (applying *Reves*).

¶ 29     With respect to the third factor, no evidence indicated the reasonable expectations of an "investing public," but the Witts' expectation was that they would obtain a profit on their investment, plus interest, within a period of time.  The Witts, as the investing public, would therefore reasonably view the transaction as an investment and the note as a security.  *See id.* at 1016.

¶ 30     Finally, defendant suggests no "regulatory scheme," and we are not aware of one, that so significantly reduced the investment risk as to make application of the CSA unnecessary.  He suggests that the availability of a civil suit against him satisfies the *Reves* requirement of a "regulatory scheme," but we disagree.  Although civil suits provide a remedy for victims of fraud, the civil system

13

does not regulate the risks of a promissory note. Accordingly, we conclude that the fourth family resemblance factor weighs in favor of the presumption that the note is a security.

¶ 31 For these reasons, we conclude that the Witts' investment, memorialized by the promissory note, was a transaction protected by the CSA. And it did not strongly resemble the family of transactions that are not securities.

¶ 32 In sum, we conclude that, after applying the four-factor test announced in *Reves* and adopted by Colorado in *Mendenhall*, the evidence, viewed as a whole and in the light most favorable to the prosecution, was "sufficient to support a rational conclusion that the defendant is guilty of [securities fraud] beyond a reasonable doubt." *McCoy*, ¶ 37.

### III. Jury Instruction Defining "Security"

¶ 33 In instructing the jury, the trial court included the statutory definition of "security," which includes "any note." *See* § 11-51-201(17). Defendant did not object to the definition of security given to the jury, nor tender an alternative instruction. Nonetheless, defendant contends the trial court plainly erred by

denying "his right to a jury determination that the notes at issue were securities." *Mendenhall*, ¶ 40.  We disagree.

¶ 34     Plain error is error that is obvious.  Obvious errors "must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law." *Scott v. People*, 2017 CO 16, ¶ 16 (quoting *People v. Pollard*, 2013 COA 31M, ¶ 40).  "Moreover, an erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial[.]" *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).  Because plain error requires that the error be obvious and any legal principles be "well settled," we only consider the status of the law at the time of trial.  *People v. O'Connell*, 134 P.3d 460, 465 (Colo. App. 2005).

¶ 35     Definitional jury instructions that accurately track the language of the applicable statute are generally proper and sufficient.  *People v. Houser*, 2013 COA 11, ¶ 76.

¶ 36     *Mendenhall* was decided after defendant's trial.  Though federal case law concerning the Federal Securities Exchange Act of 1934 and the Federal Securities Act of 1933 is persuasive, it does not settle the law governing the CSA.  *See United States v. McKye*, 734 F.3d 1104, 1110 (10th Cir. 2013) ("[T]he district court erred

15

when it instructed the jury that notes are securities."); *see also*
*Reves*, 494 U.S. at 63 (holding that not every note is a security).  At
the time of defendant's trial, no Colorado case law directly
addressed the issue of whether "any note" is a security.

¶ 37      Accordingly, we conclude that, at the time of defendant's trial,
the law was not well settled, and any error in the given jury
instruction would not have been obvious or plain.  *See People v.*
*Valdez*, 2014 COA 125, ¶ 27 ("[W]here the law is unsettled, the trial
court's alleged error with respect to the law cannot constitute plain
error."); *see also People v. Howard-Walker*, 2017 COA 81M, ¶¶ 56-
57 (finding no plain error on evidentiary issue where latest supreme
court formulation occurred over a year after trial and no appellate
case directly addressed particular issue raised) (*cert. granted* May
21, 2018).

   IV.  Two Convictions for Securities Fraud and Double Jeopardy

¶ 38      Defendant claims that his two convictions and sentences for
securities fraud violated double jeopardy because they are
alternative ways of committing the same offense, and therefore the
two counts should be merged.  But he did not raise this claim

16

before the trial court.  As discussed in Part III, supra, the law is not well settled in this area, and we perceive no plain error.

## A.  Law of Merger and Double Jeopardy

¶ 39    We review de novo whether merger applies to criminal offenses.  *People v. Zweygardt*, 2012 COA 119, ¶ 40.  An unpreserved double jeopardy claim is reviewable for plain error.  *Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 45-46.

¶ 40    Unless a statute expressly authorizes multiple punishments for the same criminal offense, the Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit "the imposition of multiple punishments for the same criminal conduct."  *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005); *see* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18.  When a statute provides alternative ways of committing a single criminal offense, multiplicity concerns may materialize.  *Woellhaf*, 105 P.3d at 214.  In such cases, courts must determine "the legislatively prescribed unit of prosecution" and "whether the defendant's conduct constitutes factually distinct offenses, that is, whether the conduct satisfies more than one defined unit of prosecution."  *Id.* at 211, 218-19.

17

¶ 41    In determining whether offenses are factually distinct, we

consider factors including the time and location of the events, the

defendant's intent, and whether the People presented the acts as

legally separable. *See Quintano v. People*, 105 P.3d 585, 591-92

(Colo. 2005). However, no one factor is dispositive and the inquiry

ultimately focuses on "all the evidence introduced at trial to

determine whether the evidence on which the jury relied for

conviction was sufficient to support distinct and separate offenses."

*Id.* at 592.

¶ 42    If a defendant is convicted of multiplicitous counts, the proper

remedy is to merge the multiplicitous convictions. *See People v.*

*Rhea*, 2014 COA 60, ¶¶ 16-17.

## B. Multiplicity Not Obvious

¶ 43    A person commits securities fraud in Colorado when, in

connection with the offer, sale, or purchase of any security, he

> (b) . . . make[s] any untrue statement of a
> material fact or [omits] to state a material fact
> necessary in order to make the statements
> made, in the light of the circumstances under
> which they are made, not misleading; or
>
> (c) . . . engage[s] in any act, practice, or course
> of business which operates or would operate
> as a fraud or deceit upon any person.

18

§ 11-51-501(1).

¶ 44    Defendant was charged with one count of securities fraud by means of an untrue statement or material omission under section 11-51-501(1)(b), and one count of securities fraud based on fraud by deceit under section 11-51-501(1)(c).  Other than by incorporating the statutory language, the complaint does not specify what conduct supports the respective charges.

¶ 45    In closing argument, the prosecutor argued that defendant committed two separate offenses because (1) he did not disclose the foreclosure or the bankruptcy to the Witts; and (2) he took their money, put it in in his main bank account, and started to spend it.  The jury instructions state the elements of each charge, but do not specify the conduct relating to each instruction.  The jury returned one verdict as to each count, but the general verdict forms do not indicate what conduct supports each verdict.

¶ 46    We agree with defendant that the General Assembly prescribed only a single unit of prosecution for securities fraud.  *See People v. Abiodun,* 111 P.3d 462, 466 (Colo. 2005) (holding that when the legislature joins "a number of acts . . . as a disjunctive series,"

rather than describing them in different provisions under different titles, it defines alternative means of committing a single offense). Thus, sections 11-51-501(1)(b) and (c) are alternative means of committing securities fraud.

¶ 47     Accordingly, defendant's two convictions and sentences could be supported only if his alleged offenses were "factually distinct" under *Quintano.*

¶ 48     The evidence of defendant's false statements and material omissions in obtaining the loans supports a conviction under section 11-51-501(1)(b).  But the prosecution did not argue that there was a separate fraud or deceit supporting the section 11-51-501(1)(c) charge.  Instead, the prosecution argued that the deceitful conversion of funds constituted the violation of subsection (c). Although the misleading act and the conversion of funds happened on separate days, perhaps giving defendant "time to reflect" on his behavior, *Quintano,* 105 P.3d at 592, the prosecutor did not clearly separate defendant's misleading statements and omissions from his later misuse of the funds, each of which related to the same note and the same victims.

¶ 49    We read federal law to require, as relevant here, a separate sale and a separate fraudulent statement in each count to support a multiple count indictment for securities fraud. *See United States v. Langford*, 946 F.2d 798, 804 (11th Cir. 1991) (reversing some of the defendant's multiple convictions for securities fraud in a scheme against one victim because "each count of the indictment must be based on a separate purchase or sale of securities and each count must specify a false statement of material fact — not a full-blown scheme to defraud — in connection with that purchase or sale"); *see also United States v. Regensberg*, 604 F. Supp. 2d 625, 629 (S.D.N.Y. 2009) (holding that two counts of securities fraud were not multiplicitous because each count embodied "groups of two separate transactions that are governed by different terms and conditions, involved different buyers, and occurred over different time periods").

¶ 50    Applying the federal standard, we conclude that defendant was charged with and convicted of multiplicitous counts of securities fraud because the evidence showed a sale of one security, to one

21

investor based on one set of false or misleading statements.[2] But no Colorado case, well-settled legal principle, or statutory command addressed the proper unit of prosecution under the Colorado securities law. Accordingly, we cannot conclude that in the absence of a motion it would have been obvious to the trial court that the two convictions were multiplicitous. We conclude that there was no plain error.

## V. Sufficient Evidence of Theft

¶ 51    Defendant was charged with one count of theft under section 18-4-401(1)(b). To support a conviction for that offense, the prosecution must prove that defendant (1) knowingly obtained, retained, or exercised control over something of value of another without authorization or by threat or deception; and (2) knowingly used, concealed, or abandoned it in a manner to permanently deprive the Witts of its use or benefit. *See id.*

---

[2] Had the separate counts charged a securities violation based on each of the Witts' advances as part of a continuing fraud, multiple counts may have been supported, but that is not what was charged here. *See Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983) (Where the contract was a continuing one that required periodic payments, fraudulent statements to keep contributions coming "was fraud in connection with the continuing sale of a security.").

¶ 52    Defendant argues that there was insufficient evidence that he knowingly used the Witts' money in a manner to permanently deprive them of its benefit because the transaction was an unconditional personal loan and he used a portion of the proceeds to improve one of the properties offered as collateral on the note. Although this argument was not preserved, we address it for the reason described in Part II.B, *supra*. We are not persuaded.

¶ 53    The Witts testified at trial that they had agreed the money was to be used for the development of Timber Ridge, as a "no risk" investment in the project. And an investigator testified that defendant used the funds to pay his own attorney fees, to improve the house that his wife continued to occupy at the time of trial, and for other personal expenses.

¶ 54    Defendant's argument that he failed to repay the Witts because they refused to release a lis pendens on his "second residence" is without merit because this supposed buyer did not surface until March 2013, well after defendant had defaulted on the loan to the Witts and after he was criminally charged. The argument does not affect this conclusion. *See People v. Pedrie*, 727

23

P.2d 859, 863 (Colo. 1986) (holding that the return of stolen property is not a defense to a theft charge).

¶ 55    We conclude that, viewing this evidence in the light most favorable to the prosecution, it is sufficient to support a rational conclusion that defendant knowingly obtained the Witts' money by deception and intended to permanently deprive them of it.

## VI.  Admissibility of Evidence of Other Transactions

¶ 56    In a pretrial motion, the prosecution requested the trial court to allow evidence that in 2010 defendant had obtained money from another person under false pretenses by entering into an agreement to sell a lot in Timber Ridge that he did not own.  The prosecution argued the evidence was relevant to show identity, knowledge, motive, intent, modus operandi, and lack of mistake or accident. Over defendant's objection, the court ultimately allowed the evidence to show identity, knowledge, motive, and lack of mistake or accident, and gave the jury an instruction limiting use of witnesses' testimony to those purposes.[3]

---

[3] When the prosecutor informed the court that the charge of theft in the case did not require intent, but only "a knowing use in a manner to permanently deprive," the court reversed its position that the evidence would be admissible for intent.

24

¶ 57     One witness testified that he had purchased lot 8 in the

Timber Ridge subdivision in 2007, and another witness testified

that he had paid defendant $120,000 for the same lot in 2010.  The

second witness also testified that when he asked for his money

back, defendant responded with an expletive.[4]

### A.  Applicable Law and Standard of Review

¶ 58     Under CRE 404(b), a defendant's prior act cannot be admitted

to prove the defendant's character to show that he or she acted in

conformity with that character on a particular occasion, but it can

be admitted for other purposes if the trial court has determined that

the prior act occurred, and that the evidence satisfies the four-

prong test in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).

¶ 59     Under *Spoto*, the Rule 404(b) evidence must

> (1) relate to a material fact; (2) be logically
> relevant; (3) have a logical relevance that "is
> independent of the intermediate inference,
> prohibited by CRE 404(b), that the defendant
> has a bad character" and committed the crime
> charged because he acted in conformity with
> that bad character; and (4) have a probative

---

[4] Defendant was convicted of theft by deception from this victim and
his conviction was affirmed by a division of this court.  *People v.
Thompson,* (Colo. App. No. 13CA1413, Feb. 16, 2017) (not published
pursuant to C.A.R. 35(e)).

> value that is not substantially outweighed by the danger of unfair prejudice.

*Perez v. People*, 2015 CO 45, ¶ 25.

¶ 60   That other act evidence may imply a defendant's bad character does not preclude the evidence so long as it is offered for a permissible purpose. *Spoto* "does not demand the absence of the inference but merely requires that the proffered evidence be logically relevant independent of that inference." *People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994).

¶ 61   Because defendant objected to the admission of the evidence, we review the trial court's admission of other act evidence for abuse of discretion. The decision will not be disturbed unless it was arbitrary, unreasonable, or unfair. *People v. Osorio-Bahena*, 2013 COA 55, ¶ 21.

¶ 62   In ruling on the Rule 404(b) motion, the district court explicitly noted *Spoto* and engaged in the required four-part analysis for the offered purposes.

¶ 63   Defendant argues that the evidence was not logically relevant to prove identity, motive, knowledge, or absence of mistake. We are not persuaded.

## B. Analysis

¶ 64    Defendant's explanation of his transaction with the Witts was that (1) it was a legitimate business deal; (2) he had no intention to defraud or deceive them; (3) he intended to perform according to the agreement; and (4) he was unable to do so because of unfortunate or unexpected business consequences beyond his control.

¶ 65    Evidence that the defendant had permanently deprived another investor of his money, by similar false promises and deceptive statements involving the same project, is logically relevant to prove that his motive was not to enter into a legitimate business agreement with the Witts, and that his inability to return the Witts' investment was not due to a mistake or accidental circumstances beyond his control.

¶ 66    We conclude that the probative value of introducing the prior act was not substantially outweighed by the danger of unfair prejudice, "especially because the court gave a limiting instruction." *People v. Cooper*, 104 P.3d 307, 309 (Colo. App. 2004); *see Garcia*, ¶ 20 ("We presume that the jury followed the court's [limiting] instructions, absent evidence to the contrary."). We further conclude that the district court's admission of the prior act evidence

27

was not so arbitrary, capricious, or unfair as to constitute an abuse of discretion. *See People v. Torres*, 224 P.3d 268, 274 (Colo. App. 2009) (finding no abuse of discretion where trial court ruled that, considering the similarities between the two incidents, the probative value of the prior act was not substantially outweighed by its potentially prejudicial effect).

## VII.  Sentencing

¶ 67    Finally, defendant argues that his sentence for theft must run concurrently with the concurrent sentences for securities fraud because the crimes are based on identical evidence.  We disagree.

### A.  Standard of Review and Applicable Law

¶ 68    The parties agree that defendant did not preserve this issue for review.  As such, we review for plain error.  *See Reyna-Abarca*, ¶ 47.

¶ 69    Although a sentencing court generally has discretion to impose concurrent or consecutive sentences on a defendant convicted of multiple crimes, consecutive sentences are statutorily prohibited if identical evidence supported each count.  § 18-1-408(3), C.R.S. 2017.  To determine whether the evidence is identical, a court must decide whether the convictions were "based on more than one distinct act and, if so, whether those acts were separated by time

28

and place." *People v. Glasser*, 293 P.3d 68, 79 (Colo. App. 2011). The sentencing court's decision will be overturned "only if the evidence supports no other conclusion than that the charges are based on identical evidence." *People v. Muckle*, 107 P.3d 380, 383 (Colo. 2005). Further, "the mere possibility that the jury may have relied on identical evidence in returning more than one conviction is not sufficient to trigger the mandatory concurrent sentencing provision." *Id.*

### B. Analysis

¶ 70     We agree with the People that the theft and securities fraud charges were not necessarily based on identical evidence, and therefore decline to disturb the sentencing court's discretion.

¶ 71     The convictions for securities fraud were predicated on the misstatements and material omissions made by defendant to the Witts in connection with the sale of a security, an element of evidence for securities fraud not required for theft. Defendant's retention and use of the funds obtained from the Witts for personal benefit knowingly permanently deprived them of its use, an element of evidence not required for securities fraud.

¶ 72    In these circumstances, it is not the case that "the evidence supports no other conclusion than that the [theft and securities fraud] charges are based on identical evidence." *Id.* Because different evidence supported each offense, we affirm the imposition of a consecutive sentence for the theft conviction.

## VIII. Conclusion

¶ 73    The judgment and sentence are affirmed.

JUDGE WEBB and JUDGE FOX concur.